No. 13,651.

THE BOARD OF COMMISSIONERS OF ST. JOSEPH COUNTY *v.* THE SOUTH BEND AND MISHAWAKA STREET RAILWAY COMPANY.

CONTRACT.—*Guaranty Deposit.*—*Agreement to Refund.*—Where a street railway company is given permission by the board of county commissioners to lay its track along a public highway, and is required to deposit in the county treasury a certain sum of money, which is to be repaid upon the performance by it of certain conditions, it can only recover the money so deposited by showing a performance of the conditions, or a legal excuse for not doing so.

SAME.—*Onerous Conditions.*—*Excuse for Non-Performance.*—The fact that the performance of the stipulated conditions by the railway company will put it to great inconvenience and cause it a large outlay of money, is not a sufficient excuse for the non-performance of its agreement.

From the St. Joseph Circuit Court.

*T. E. Howard* and *A. Anderson,* for appellant.

*L. Hubbard* and *E. V. Bingham,* for appellee.

BERKSHIRE, J.—This was an action by the appellee to recover from the appellant the sum of $500.

On March 11th, 1885, the appellant granted to the appellee the right to lay a street railway on the highway south and west of the St. Joseph river, from South Bend to Mishawaka, upon certain conditions, one of which was that the appellee would pay into the treasury of St. Joseph county the sum of $500 within thirty days, said sum to be repaid to the appellee when the conditions were all complied with by the appellee.

At the request of the parties the court made a special finding. To the conclusions of law the appellant excepted, and the court gave judgment for the appellee for the sum of $500 and costs.

There is but one error assigned, which is as follows: That the court erred in its conclusions of law on the facts found.

The following is the special finding, as made by the court:

"That the South Bend Street Railway Company, on or before the 11th day of March, 1885, had applied to the defendant, the board of county commissioners of St. Joseph county, Indiana, for leave to lay a street railway track on a public highway on the north side of the St. Joseph river, from South Bend to Mishawaka, not in the corporate limits of any town or city, which permission was granted and an order made by the defendant in such matter, in the terms following:

"'Eighth day, March 11, 1885.

"'In the matter of the petition of the South Bend Street Railway Company to extend said railway:

"'Now comes the South Bend Street Railway Company and presents to the board their petition in the words and figures following, to-wit: (Insert.) And said petition being heard, on motion of the Board, it is

"'Resolved, That the South Bend Street Railway be and is hereby authorized to lay down and operate a street railway on the public highway, next north of the St. Joseph river, between the easterly limits of the city of South Bend and the westerly limits of the town of Mishawaka, on the conditions, to-wit:

"'1st. Thirty days from the passage of this resolution it shall pay into the treasury of St. Joseph county the sum of $500, the same to be a part of the funds of this county: Provided, however, that in case the said street railway shall be complete and in actual operation as hereinafter provided, on or before the 1st day of January, 1886, then and in such event, and not otherwise, said sum of money shall be repaid to said company.

"'2d. The cars to be used on the track of said company shall be operated by animal power only, and shall be used only to carry passengers and their baggage, and material for constructing and repairing tracks, and shall be of the best style and material, and the price for carriage of passengers

between Mishawaka and South Bend not more than ten cents per trip for each passenger, and not more than fifteen cents for the round trip if round trip tickets are given.

" '3d. The track shall be laid level with the surface of the highway when laid thereon, and shall conform to the grade thereof in such a manner as in no way to impede the passage of vehicles, and with proper bridges so that the flow of water in the ditches and gutters shall be in no way hindered or impeded. The track may be laid along and close to the north and east line of the highway, outside of the raised, improved and travelled portion thereof, or it may be laid on the road-bed as worked and travelled, and in no case shall the west and south line of the track be laid within three feet of the center of the road-bed of the highway as worked and travelled ; and if laid on the road-bed, then the company shall keep the space between the rails and two feet on each side outside of the rails in good order for travel, so as at all times to be on a level with the highway, and the line shall be completed by January 1st, 1886.

" '4th. The track of the company shall be of the uniform gauge of four feet eight and one-half inches in width, and shall be built of the most approved material.

" ' 5th. The cars shall not be allowed to stand on the highway unless when attached to a team and waiting for passengers.

" ' 6th. This covenant and permit is to be void unless the said company complies with the foregoing provisions and has the said street railway completed and in actual operation for the whole length of the line on or before the 1st day of January, 1886.'

" That the plaintiff, desiring to lay a street railway on the same highway mentioned in the foregoing order, and also on the highway first south of the St. Joseph river, between South Bend and Mishawaka, filed a petition in the following terms with the defendant, to wit:

" 'To the Board of Commissioners of St. Joseph County, State of Indiana:

" ' GENTLEMEN—Your petitioners, the South Bend and Mishawaka Street Railway Company, would most respectfully represent that they are desirous of constructing, owning and maintaining two street railway lines, or routes of street railway, one of said routes to be located on and along the river road on the northerly side of the St. Joseph river, thus enabling said company to construct a continuous line or route of street railway, from the city of South Bend to the town of Mishawaka.

" ' Also a second line or route of street railway in and along Vistula highway, on the southerly side of the St. Joseph river, thus enabling your petitioners to construct a second continuous line or route from the city of South Bend to the town of Mishawaka. We therefore submit the following ordinance for your consideration.

" ' Yours Respectfully,

" ' SOUTH BEND AND MISHAWAKA STREET RAILWAY CO.

" ' By J. W. BOYNTON, President.

" ' J. H. KNIGHT, Secretary.'

" That on the consideration of said petition, on the 11th day of March, 1885, the board of commissioners of St. Joseph county, Indiana, made the following order :

" ' Eighth day, March 11th, 1885. March Term.

" ' In the matter of the petition of the South Bend and Mishawaka Street Railway Company.

" ' Now comes the South Bend and Mishawaka Street Railway Company and presents to the board their petition, in the words and figures following, to wit : (Insert). And the board being fully advised it is ordered further : Resolved, That the South Bend and Mishawaka Street Railway Company is hereby authorized to lay down and operate a street railway on the same public highway, and also on the public highway next south of the St. Joseph river, and between the easterly limits of the city of South Bend and the westerly

limits of the town of Mishawaka, on the same terms and conditions, in every respect, as the terms and conditions hereinbefore imposed on the South Bend Street Railway Company, except that the track on the north side of the St. Joseph river shall be laid on the south and west sides of the public highway, and the whole of said lines on both sides of the river shall be completed and in operation by January 1st, 1886, subject to the conditions and forfeitures aforesaid.'

" The court further finds that from the easterly limits of South Bend to the westerly limits of Mishawaka is about four miles. The ordinary width of the highways on which such railway is located is about sixty feet, and the ordinary width of the travelled portion thereof is about thirty-two feet.

" That, within the time prescribed in said order of the defendant, the plaintiff paid into the treasury of St. Joseph county, Indiana, said sum of five hundred dollars, and did proceed to construct its road on both sides of the St. Joseph river. That the said street railway on the north and east side of the St. Joseph river was completed and in operation, in all respects in compliance with the order and grant of the defendant, before January 1st, 1886.

" That, at the December term, 1885, of said board of commissioners, the plaintiff petitioned and demanded of said board that the said five hundred dollars be refunded. That thereupon the board passed the following order December 17th, 1885:

" ' In the matter of the South Bend and Mishawaka Street Railway Company, to have their five hundred dollars guarantee deposit refunded.

" ' Now comes the South Bend and Mishawaka Street Railway Company, by its secretary, J. H. Knight, and the board having considered the petition of said company heretofore filed, asking for the return of the sum of five hundred dollars deposited in the county treasury as security for the faithful construction of said street railway, according to the

terms of the grant made by this board, which petition is in these words : (Insert.) And the members of the board having made personal inspection of said street railway, and the board being fully advised, are of the opinion that said street railway has been, in general, constructed according to the requirements of said grant, with certain exceptions as follows :

" ' The board are of opinion that, whereas it was required in said grant that the track of said street railway on the south side of the St. Joseph river should be laid north and east of the middle line of the travelled portion of the highway, and not nearer than three feet thereto, yet in some places said track is laid on or south and west of the said middle line of the highway, this being particularly the case on and near the bridges on said highway south of the St. Joseph river.

" ' It is therefore ordered by the board, that said street railway company, in compliance with the terms of said grant, remove their track on said bridges and elsewhere along the highway next south of the St. Joseph river, off and from all that portion of said highway and bridges south and west of the middle line of the travelled portion of the road-bed of the highway and bridges, and re-lay said track and switches so that the south and west rail of said street railway track, or of any switch or turn-out thereof, shall not be nearer than three feet at any place to said middle line of the travelled highway : *Provided, however,* That a single track may be run over said bridges on the north and east side thereof, and leaving two feet between the north and east rails and the north and east guards of said bridges, if so much is necessary for the free running of said cars.

" ' It is further ordered that said street railway company, after bringing the surface of said track to an even grade with the surface of the said highway and bridges, as required by said grant, do not disturb or interfere with said highway or bridges outside their track, and two feet on each side thereof,

further than is necessary to enable the company to comply with the terms of the grant; that they will not remove the snow from said part of said highway and bridges, or pile snow thereon on the south and west sides of said middle of said highway and bridges, the intent of this requirement being that the portion of said highway and bridges outside the said street railway track and two feet on each side thereof, including the whole of the highway and bridges south and west of a line three feet north and east of the middle line of the travelled portion of said highway and bridges, should be preserved free for the sole use of the travelling public.

" ' It is further ordered that as soon as the auditor becomes satisfied that said street railway company has complied substantially with the terms of the foregoing provisions of this order, liberally interpreted so as to preserve the rights and privileges of the public, then he shall draw his warrant on the county treasury in favor of the South Bend and Mishawaka Street Railway Company for said sum of $500.

" ' It is further ordered that the time for the completion of said South Bend and Mishawaka Street Railway be and it is hereby extended until the 1st day of July, 1886.'

" The court further finds from the admissions of both parties, that there is a controversy between the parties only as to whether the said railway has been located according to the grant of the defendant at two places on the south and west side of the St. Joseph river, which places are known as ' the Springbrook bridge and the approaches thereto,' and '' the Wenger creek bridge and the approaches thereto.'

"And the court finds the facts in such controverted matter to be as follows: At the Springbrook bridge there is a switch with a double track of 525 feet in length extending across the bridge and embankments. The bridge is 18 feet wide and 50 feet long. The south rail of the tracks, for the whole length of the switch, is south of the center of the travelled portion of the highway.

"At the Wenger creek bridge there is a switch 504 feet

long, with double tracks of that length, and the bridge is at the center of the switch.   The bridge is 16 feet wide and 50 feet long.   The south rail of the track for the whole length of the switch is south of the travelled portion of the highway, and for 470 feet east of the east end of the switch the south rail is also south of the center of the travelled portion of the highway.

" The gauge of the tracks of plaintiff's railway is four feet eight and one-half inches; the cars are from seven and one-half to eight feet wide.   The length of the cars ordinarily used, with teams, is thirty-four and one-half feet.  The distance between the double track is three and one-half feet to four feet.   Sometimes as many as five cars are on these switches at one time on fair and picnic occasions.

" The general course of the highway at the Springbrook bridge is about east and west.   The bridge is set across the creek so as to make an angle with the general course of the highway, the east end of the bridge being south of the line of the highway.   This makes a curve in the track necessary at this place.   On the north side of the embankment on the east end of the approaches to the Springbrook bridge the road-bed descends to the north.   The approaches to the Springbrook bridge are embankments on both sides, materially narrowing the highway at this bridge and the approaches to from 16 to 24 feet.

" The approaches to the Wenger creek bridge are long embankments from 18 to 24 feet wide, and the embankments and bridge form a curve in the general course of the highway.   About 570 feet from the east end of the switch is a washout or gully cut by the water on the river bank.   At this point the river encroaches on the highway, making a steep bank encroaching into the highway, which bank is about 50 feet high.   The track from the east end of the switch on the east approach of the Wenger creek bridge bears to the south of the center of the travelled portion of the highway, so as to avoid the gully or washout on the river bank, and

the north rail of the track is laid as close to the north side of the highway at the Wenger creek bridge, and east and west of the washout, as is safe for use by the travelling public.

" The court further finds that for the successful operation of plaintiff's street railway on said highway, side-tracks or switches are necessary at intervals to allow cars to pass each other; that the plaintiff has no more switches than the ordinary travel on said street railway requires; that the switches at the Wenger creek bridge and Springbrook bridge are located at the places most convenient for the plaintiff in the operation of said street railway; that as street railways are usually built, the track must be straight at the point where the car takes the switch; that sharp curves in the track require curve irons, or tracks with a groove in the rail, or a guard raising one side of the rail to hold the car, either of which offers some impediment to public travel in vehicles, more serious than the ordinary track used on said railway; that the curves in plaintiff's track are as short as they can be operated practically at the places where laid, and the track as near to the north side of the travelled portion as it can safely be laid and practically operated, by reason of the encroachment of the river on the highway and the narrowness of the bridges and approaches thereto, in the condition of such highway at the time of the grant and construction of the railway; that at such places the railway was built so as to cause no unnecessary obstruction to travel with vehicles.

" At the east end of the switch the south rail is six (6) feet distant from the south side of the travelled way, and the north rail is sixteen (16) feet distant from the north line of the travelled way. At the west end, where the double track commences, the south rail is seven (7) feet from the south side of the travelled way, and the north rail is nine (9) feet from the north side thereof. At a point just east of the bridge the north rail is ten and one-half (10½) feet from the north side of the travelled way, and the south rail is three (3)

feet north of the south side of the travelled way. At the east end of the switch the south rail is six (6) feet from the south side of the travelled way, and the north rail is sixteen (16) feet south of the north side thereof. At a point forty (40) feet west of the west end of the switch the south rail is five (5) feet north of the south line of the travelled way, and the north rail is fifteen (15) feet south of the north line thereof, and the south rail for the whole length of the switch is south of the center highway.

" The measurements of the Wenger creek bridge are as follows: At the westerly end thereof the south rail is eleven (11) feet from the south line of the travelled way, and the north rail is eight (8) feet from the north side thereof. On the approach just west of the bridge each outside rail is four (4) feet distant from the outside of the travelled way nearest the rail. The bridge is sixteen (16) feet wide, with a span of fifty (50) feet. The switch of the double track is five hundred and four (504) feet long, the bridge being about the center thereof. At the east end of the switch the south rail is eleven and one-half (11½) feet from the south line of the travelled way, and the north rail is nine (9) feet from the north line of the travelled way. Twenty (20) feet east of the east end of the switch the south rail is fifteen (15) feet from the south side of the travelled way, and the north rail is twelve and one-half (12½) feet from the north line thereof. A road known as the Turkey Creek road strikes the highway between South Bend and Mishawaka, at a point four hundred and seventy (470) feet east of the east end of the switch, and at said Turkey Creek road the south rail is eleven (11) feet from the south line of the travelled way, and the north rail is seventeen (17) feet from the north side of the travelled way. The track here is carried to the south in order to avoid a washout of the bank of the St. Joseph river, which point is about one hundred (100) feet east of the Turkey Creek road. The gauge of the tracks is four (4) feet eight and one-half (8½) inches, and the cars are from seven and one-half

(7½) to eight (8) feet wide. Sometimes as many as five cars are on these switches at one time. The length of the cars and team is thirty-four and one-half (34½) feet; the width between the double track is from three and one-half (3½) to four (4) feet. The city of South Bend lies westerly from Mishawaka, and the general course of the highway is from east to west, running parallel to and south of the St. Joseph river. At the Springbrook bridge the general course of the highway is about east and west. The bridge runs from south of east to north of west, making an angle with the general course of the highway east of the bridge.

"That at all other places on said highway the order and grant of the defendant was complied with in all respects, in the location, construction and operation of said railway before July 1st, 1886, and from the facts stated the court finds that the said grant or order was substantially complied with at said bridges and the approaches thereto, before July 1st, 1886, by the plaintiff.

"The court further finds that in September, 1886, plaintiff demanded of defendant the return of said five hundred dollars deposit, which demand was refused by the defendant; that at the September term, 1886, of the board of commissioners of St. Joseph county, the board made the following order, on September 10th :

"'Now comes the South Bend and Mishawaka Street Railway Company, by their attorney, Lucius Hubbard, and ask to have their guarantee deposit of five hundred dollars ($500) refunded, and said petition being read, it is ordered by the board that when said road is completed, as per the grant and subsequent orders of the board,' then said amount will be refunded.'

"And the court finds, as a conclusion of law from the foregoing facts, that the plaintiff is entitled to recover in this action the sum of five hundred dollars, to which conclusion of law the defendant now excepts.          DANIEL NOYES.

"January 6th, 1887."

This special finding indicates what the conditions were upon the performance of which the appellee was to have repaid to it the $500 it had paid into the treasury of the appellant. It discloses further that the appellee had failed to comply with the conditions in particulars that are important and material.

It is elementary that one party to a contract can not 'enforce a contract against the other without showing a performance on his part or a legal excuse for not having performed.

It is shown in the special finding that it would work inconvenience to the appellee, and put it to a considerable outlay financially, if required to perform the conditions of the contract on its part, and that is the most that is shown.

We have never understood that the law will excuse a party from the performance of his contract because it will be a hardship upon him if he is required to perform, and we think no authority can be found to sustain such a contention. 2 Parsons Contracts, 808–809; *Indiana Ins. Co. v. Capehart,* 108 Ind. 270; *Wheeler, etc., Mfg. Co. v. Worrall,* 80 Ind. 297; *Indianapolis, etc., R. R. Co. v. Holmes,* 101 Ind. 348; *Shearer v. Evansville, etc., R. R. Co.,* 12 Ind. 452; *Parker v. Thomas,* 19 Ind. 213; *Taylor v. Fletcher,* 15 Ind. 80; *Moore v. Campbell,* 111 Ind. 328.

The parties made the contract for themselves, and the law will only enforce it according to its terms and conditions.

The appellant having agreed to pay to the appellee a certain sum of money when the latter did certain things, the law can not step in and say to the appellant, you shall pay the money, notwithstanding you have not received what you contracted for as a condition precedent to the payment. The court erred in its conclusions of law.

The judgment is reversed, with costs, and the court below is instructed to render judgment for the defendant.

Filed March 8, 1889.